IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUN 2 8 2006

Michael N. Milby, Clerk

| | | |
|---|---|---|
| In the Matter of the Search of | § | |
| 5444 Westheimer Road | § | No. 06-mc-238 |
| Suite 1570 | § | |
| Houston, Texas, on May 4, 2006 | § | |

## UNITED STATES' RESPONSE IN OPPOSITION TO ERHC ENERGY INC.'S MOTION FOR RETURN OF PROPERTY, TO ENJOIN GOVERNMENT REVIEW OF SEIZED DOCUMENTS AND COMPUTER IMAGES PENDING JUDICIAL REVIEW, AND TO UNSEAL AFFIDAVIT IN SUPPORT OF SEARCH WARRANT[1]

Comes the United States, by and through its counsel, Acting Chief Paul E.

Pelletier and Trial Attorney Mary K. Dimke, United States Department of Justice,

Criminal Division, Fraud Section to oppose ERHC Energy Inc.'s (ERHC) motion

(1) to return certain evidence seized during the execution of a lawfully obtained

search warrant, (2) to appoint a special master to review all evidence seized during

the execution of the search, and (3) to unseal the affidavit supporting the search

warrant.[2]

---

[1] Pursuant to Procedure 6 of United States District Judge David Hittner, a three-page summary of this response is attached. See Attachment A.

[2] ERHC also moved to obtain a copy of all seized materials. The parties have resolved this issue, which was under discussion at the time that ERHC filed its motion.

1

ERHC requests that the Court take unjustifiable and unprecedented action in this routine execution of a search warrant on a corporation's office. Under ERHC's proposal, the government would not be able to review one shred of evidence that was obtained during a search of ERHC's office—a search that was approved by a neutral magistrate judge who reviewed a detailed 39-page affidavit setting forth the probable cause to believe that ERHC bribed foreign officials, and committed wire and securities fraud—until the 118 boxes of materials and four hard drives are reviewed by a special master or the Court *and* ERHC. ERHC's suggestion that it should review materials obtained during a search for responsiveness and privilege is clearly inappropriate and should be rejected. Moreover, review by the Court is unnecessary because the government has established a taint team procedure, which other courts have determined is adequate to protect ERHC's interest in potentially privileged materials.

Finally, ERHC requests that the Court unseal the affidavit during the very initial stages of the investigation. ERHC has no Fourth Amendment right to access the affidavit at this pre-indictment stage. Indeed, compelling government interests exist to maintain the affidavit under seal because disclosure would significantly impede the investigation at its most vulnerable stage.

In truth, ERHC's motion is nothing more than an improper attempt to

second guess the probable cause determination made by the magistrate judge,

achieve pre-indictment suppression of evidence validly seized, and impede and

delay the government's investigation into ERHC's activities.  Rule 41(g) is not the

proper procedural vehicle to challenge the facts underlying the warrant and this

pre-indictment stage is not the proper time to bring such challenges.  Because

ERHC's unprecedented demands are not in accordance with established precedent,

the government requests that the Court deny ERHC's motion in its entirety.

## BACKGROUND

On May 3, 2006, Special Agent Dana Griffin of the Federal Bureau of

Investigation (FBI) applied in the Southern District of Texas for a search warrant

for the office of ERHC, located in Houston, Texas, for the search and seizure of

documents and other evidence.  See Ex. 1, Search Warrant Application.[3]  Special

Agent Griffin presented a detailed 39-page affidavit in support of the search

warrant to the court.  See Ex. 1, Griffin Aff.  After due consideration of the

application, United States Magistrate Judge Botley authorized the search of

ERHC's office.  See Ex. 1, Search Warrant.  Specifically, the court authorized the

---

[3] The government has submitted the Search Warrant Application, the Affidavit supporting the Search Warrant Application, the Search Warrant, and the Order sealing these documents as Exhibit 1.  Because these documents were filed under seal, the government will submit Exhibit 1 under seal and ex parte for the Court to conduct an in camera review.

seizure of 27 categories of evidence and authorized seizure or imaging of the hard

drives of all computers found on the premises.  See Ex. 1, Griffin Aff., Schedule

B.  The Affidavit specifically sought authorization to image the hard drives so that

a search could be conducted at the FBI Laboratory for responsive materials and for

files that the computer users attempted to delete or destroy, Ex. 1, Griffin Aff., ¶¶

94-99, and such authorization was granted.

Prior to the search, the agents were instructed that if they encountered any

responsive, potentially privileged materials, the agents were to segregate those

materials into separate boxes, and label the boxes as containing potentially

attorney-client privileged material.  On May 4, 2006, the FBI executed the search

of ERHC's office.  The FBI seized approximately 118 boxes of materials and

imaged the hard drives of four computers.  See ERHC Ex. B, Inventory of Seized

Items.[4]  Eight of those 118 boxes contain materials that were segregated as

potentially privileged.  See ERHC Ex. B.[5]

During the execution of the search, attorneys representing ERHC arrived at

---

[4] ERHC's public filings state that its only assets are its agreements with the governments of Sao Tome and Nigeria concerning oil and gas exploration in the territorial waters of those two nations.  See Ex. 1, Griffin Aff. ¶ 27.  Since the government's inquiry relates in part to those agreements, it should come as no surprise to ERHC that the execution of the search warrant resulted in the seizure of the majority of ERHC's documents.

[5] Boxes 59, 61, 70, 74, 87, 97, 111, 116 were labeled as potentially privileged materials.

the premises.  Government counsel informed ERHC counsel that they would not be permitted to review documents during the ongoing search.  ERHC counsel was also informed (at the time of the search and not a month later, as claimed by ERHC, see ERHC Memo. of Law at 9) that potentially privileged materials would be segregated into separate boxes for review by an independent team of attorneys and agents.[6]  Jane Barker, the secretary for ERHC, asked if ERHC could have copies of certain documents immediately, for example, bills that needed to be paid and materials related to an upcoming securities filing.  The FBI made copies of the documents that she requested and provided them to ERHC's counsel.

In a subsequent meeting and in conference calls with ERHC counsel, the government repeatedly offered to copy as a priority any materials needed for the operation of ERHC's business.  ERHC never identified any such materials prior to filing its motion.  ERHC counsel and the government engaged in discussions regarding copying the entirety of the materials seized.  On or about June 5, 2006, ERHC counsel submitted a proposed vendor to copy the materials.  Since the copying of seized evidence would be performed by an outside vendor, government counsel sought FBI approval, which was granted on June 12, 2006.  The materials

---

[6] ERHC has lodged allegations about improper questioning of ERHC employees.  The government categorically denies those allegations.  Because this is not a motion to suppress statements, this is not the appropriate time to challenge the falsity of those allegations.

were provided to the vendor on or about June 14, 2006.

## ARGUMENT

**I.    THE EVIDENCE WAS LAWFULLY SEIZED PURSUANT TO A SEARCH WARRANT AND THE GOVERNMENT HAS ESTABLISHED A PROCEDURE ADEQUATE TO PROTECT ERHC'S POTENTIALLY PRIVILEGED MATERIALS.**

ERHC seeks the return of eight boxes of potentially privileged materials and the four mirror-imaged hard drives, contending that only ERHC and the Court or a special master can review documents seized from its office for attorney-client privilege and responsiveness. ERHC seeks to eliminate the government's role in reviewing evidence seized in connection with an ongoing criminal investigation, after obtaining a lawful court order. Having established probable cause and conducted a lawful search, the government should be allowed to proceed with its investigation—including the use of a reasonable procedure for screening potentially privileged materials—without further delay.

The government requests that the Court: (A) decline to exercise its equitable jurisdiction over this pre-indictment motion because ERHC has not demonstrated the necessary extraordinary circumstances; (B) decline to enjoin the government's use of an independent taint team because it is an adequate means of protecting ERHC's privileged materials; and (3) reject ERHC's request for special master or

court review of the seized evidence because such an extraordinary and
burdensome procedure is neither legally mandated nor necessary.

**A.      ERHC has failed to demonstrate the extraordinary circumstances
necessary to warrant this Court's exercise of its equitable
jurisdiction.**

Fed. R. Crim. P. 41(g) is ordinarily used to seek return of property after an
indictment is issued; however, district courts are authorized to entertain motions
for return of property prior to indictment in extraordinary circumstances.[7]  Under
Rule 41(g), the Fifth Circuit has carved out a very limited exception to the general
rule against pre-indictment interference with an ongoing criminal investigation.
The Fifth Circuit has characterized this interference as a "unique power," which
"should be exercised with 'caution and restraint' and 'subject to equitable
principles.'" See United States v. In re Search of Law Office, Residence, and
Storage Unit Alan Brown, 341 F.3d 404, 409 (5th Cir. 2003) (reversing district
court's determination that jurisdiction existed over movant's pre-indictment Rule
41(g) request to return and suppress documents); Hunsucker v. Phinney, 497 F.2d
29, 34 (5th Cir. 1974) (affirming district court's refusal to exercise jurisdiction

---

[7] In 2002, Rule 41(e) was amended and redesignated as Rule 41(g).  See United States v.
In re Search of Law Office, Residence, and Storage Unit Alan Brown, 341 F.3d 404, 408 (5th
Cir. 2003).  Many of the cases cited in this response brief were decided prior to the amendment
and thus refer to the rule at issue as Rule 41(e).  To avoid confusion, the government will refer to
the rule by its present designation, Rule 41(g).

regarding pre-indictment Rule 41 motion for return of documents).  Before the

district court may grant relief under this "anomalous jurisdiction," four equitable

factors must be considered: (1) whether the government displayed a "callous

disregard" for the movant's constitutional rights; (2) whether the movant has an

interest in and need for the material whose return it seeks; (3) whether the movant

"would be irreparably injured by denial of the return of the property," and (4)

whether the movant has an "adequate remedy at law for the redress of [its]

grievance."  See Brown, 341 F.3d at 410.

In plain terms, the Fifth Circuit has made clear that the "callous disregard"

element is not present in the routine case, like this one, where the search at issue

"[i]s conducted pursuant to a warrant issued in a normal manner."  Id. at 409

(finding that general allegations of seizure of privileged documents insufficient to

find jurisdiction and order return or suppression); Hunsucker, 497 F.2d at 34

("Nor since the search in issue was conducted pursuant to a warrant issued in the

normal manner could we say that the action which Hunsucker seeks to attack

involved a 'callous disregard for ... constitutional rights.'").  Instead, there must be

more fundamentally improper conduct, as might be found where "government

agents have allegedly engaged in fraudulent or deceitful methods in order to gain

access to a citizen's private papers."  Richey v. Smith, 515 F.2d 1239, 1243 n.8

8

(5th Cir. 1975). The reasons for this distinction are weighty: the exercise of this exceptional, pre-indictment jurisdiction to interfere in a criminal investigation requires more than a misstep of the kind routinely litigated in the courts under the complex rubrics of Fourth and Fifth Amendment law. Rather, it is warranted only by egregious conduct reflecting that the agents intentionally flouted a citizen's rights.

In this case, the government's conduct was proper in every respect; it presented an exhaustive and detailed search warrant affidavit that was approved by a neutral magistrate; professionally and responsibly executed the warrant; copied ERHC's records on site for which the company requested immediate access; agreed to copy all documents at ERHC's request so that they were available for ERHC's business use; and instituted careful privilege screening procedures. These efforts belie any suggestion of a "callous disregard" of the movant's rights. See, e.g., Search of 4801 Fyler Avenue, 879 F.2d 385, 388 (8th Cir. 1989) (reversing district court's exercise of anomalous jurisdiction because agents did not show a "callous disregard" for movant's rights, agents acted in good faith in relying on search warrant issued by the court). ERHC contends that the government ignored ERHC's requests to segregate the potentially privileged materials. In fact, prior to the search, the government had implemented a

9

procedure to do exactly that. Consistent with standard practice, ERHC counsel was not permitted to dictate which documents would be seized pursuant to a facially valid search warrant. As discussed in more detail in Section B below, the established procedures do not violate ERHC's constitutional rights, much less demonstrate a "callous disregard" for those rights. The absence of this critical factor bars Rule 41(g) relief.

The second factor, whether the movant has a need for the materials, is not in dispute. The records belong to ERHC and the government has never contested its need to consult them in its ongoing business. For that reason, the government has provided copies to ERHC at its request, beginning the day of the search.

Similarly, ERHC cannot show any irreparable injury from the government's retention of the records because the government provided the documents for copying and established a taint team to review potentially privileged materials. Where the government takes pains to ensure that the seized records are made available for the movant's continued use, there is no irreparable injury and no cause for interference with an ongoing criminal investigation. See Brown, 341 F.3d at 414; Hunsucker, 497 F.2d at 35.[8] Here, on the day of the search, the

---

[8] See also Sealed Appellant 1 v. Sealed Appellee, 199 F.3d 276, 278 (5th Cir. 2000) (movants failed to show a business need since the government provided copies; movants' motive was primarily to withhold evidence from the grand jury); In re Search Warrant Issued July 14,

government made copies of the documents requested by ERHC's secretary and

repeatedly offered to accommodate similar requests. Once the FBI approved

ERHC's proposed vendor, the documents were provided to ERHC for copying.

Under these circumstances, ERHC cannot establish irreparable harm.

Nor has ERHC shown any violation of the attorney-client privilege to

support its claim of irreparable injury. ERHC contends that the government's

possession of potentially privileged materials causes irreparable injury. The Fifth

Circuit has confronted and rejected this argument finding that general and vague

allegations that the government has viewed extensive amounts of privileged

documents are insufficient to establish irreparable harm. See Brown, 341 F.3d at

414 (refusing to assert jurisdiction over challenge to use of a taint team). Thus,

the third factor weighs decisively against the exercise of Rule 41(g) jurisdiction.[9]

This leads to the fourth, and final, equitable consideration: whether ERHC

has an adequate remedy at law, and whether its claims should be deferred. See

_____

1987, 684 F. Supp. 1417, 1421 (N.D. TX. 1988) ("If the government agrees to return originals
and/or make copies of documents, it is difficult to envision that movants can comply with the
irreparable injury standard.").

[9] ERHC has refused to provide information to the government taint team so that it can
identify privileged materials expeditiously, and declined to identify which, if any, materials it
claims are privileged. ERHC's unwillingness to engage in the process of resolving potential
privilege issues shows the transparency of its purported concerns and exposes the true purpose
for its motion: to engage in pre-indictment suppression and to stall and hinder the investigation
into ERHC's activities. See, e.g., Sealed Appellant 1 v. Sealed Appellee, 199 F.3d 276, 278 (5th
Cir. 2000) (movants' motive was primarily to withhold evidence from the grand jury).

Industrias Cardoen, LTDA. v. United States, 983 F.2d 49, 51-52 (5th Cir. 1993)

(Rule 41(g) proceeding deferred despite finding of irreparable injury).

"[G]enerally, where a party is the target of an ongoing grand jury investigation,

Fourth Amendment considerations should be deferred, 'provided that the

[g]overnment cooperates by giving copies of items seized or by returning the

originals.'" In re Search Warrant Issued July 14, 1987, 684 F. Supp. at 1421; see

also Brown, 341 F.3d at 411-14 (discussing the fact that even illegally obtained

evidence may be submitted to a grand jury for consideration).

In this case, ERHC's legal and constitutional challenges are more properly

deferred and resolved if and when an indictment is returned.  ERHC is not a mere

bystander whose records have been swept up in an investigation that is focused

elsewhere.  To the contrary, the records were seized pursuant to a search warrant

issued by a neutral magistrate based on probable cause to believe that evidence

that ERHC bribed foreign public officials and committed securities and wire fraud

and would be found at its office.  The proper time and place to litigate the

suppression of evidence based on constitutional challenges is following an

indictment.  The orderly processes of our criminal law enforcement preclude the

piecemeal litigation of Fourth Amendment challenges during an ongoing

investigation.  See Search of 4801 Fyler Avenue, 879 F.2d at 389 ("[I]f we were to

12

allow the mere threat of future prosecution to constitute irreparable harm these procedures would not be extraordinary, but quite ordinary."); Sealed Appellant 1, 199 F.3d at 278-79.

To hold otherwise, and to permit the exercise of Rule 41(g) jurisdiction solely for the purpose of preventing an independent taint team from determining the responsiveness and the existence of privilege would undermine the enforcement of criminal law and lead to the absurd result that ERHC—the subject of the search—would determine what documents the government may view. Such a ruling would essentially eviscerate the government's ability to use a search warrant as an investigative tool in cases involving corporate misdeeds. See Zurcher v. Stanford Daily, 436 U.S. 547, 559 (1978) ("There is no occasion or justification for a court to revise the [Fourth] Amendment and strike a new balance by denying the search warrant . . . and by insisting that the investigation proceed by subpoena *duces tecum*, whether on the theory that the latter is a less intrusive alternative or otherwise."). The extraordinary remedy of returning evidence seized pursuant to a legally executed search warrant is not appropriate in this instance. Accordingly, the government requests that the Court decline to exercise its equitable jurisdiction at this pre-indictment stage and thus, dismiss this action.

**B.    The use of a taint team, as proposed by the government, adequately protects ERHC's potentially privileged materials.**

The taint team procedures proposed by the government have been endorsed by other courts, have never been criticized by the Fifth Circuit, and are consistent with local practice.  Accordingly, the government requests that the Court refuse to enjoin the use of the taint team in this instance.

Contrary to ERHC's contention, the government has taken appropriate precautions to protect ERHC's potentially privileged materials.  Indeed, in an effort to condemn the search, ERHC's motion entirely ignores the fact that from the outset of this case, during the execution of the warrant and in discussions with ERHC's counsel since the search, the government has gone to great lengths to ensure that no privileged material recovered during the search is obtained by the prosecution team.  These procedures include:

- Prior to the search, the FBI agents were instructed that if they encountered responsive potential attorney-client privileged materials, those materials should be segregated into boxes designated solely for such materials.  Once it was determined that potentially privileged materials existed, the government appointed a taint team, consisting of an attorney from the Fraud Section of the Criminal Division of the Department of Justice and an FBI agent, neither of whom are part of the prosecution team.

- The taint team will review the eight boxes of potentially privileged materials that were segregated during the search.

- To remedy ERHC's concerns that privileged documents may be located in

14

the remaining 110 boxes, the government has directed the taint team to review the 110 boxes of materials seized that were not marked potentially privileged. The taint team will remove any additional documents that are potentially privileged and segregate those documents.[10]

• Finally, the taint team will notify ERHC once it has identified all potentially privileged documents. If the taint team determines that certain documents are privileged, the taint team will return those documents to ERHC. If the taint team determines that certain document are not privileged, the taint team will notify ERHC of its determination. If ERHC disagrees, it will have the opportunity to challenge the taint team's determination to the court *before* such document is transferred to the prosecution team.[11]

These procedures guarantee that only non-privileged documents will be made available to the prosecution team for use in the ongoing investigation. The taint team will be under an obligation not to disclose the contents of any documents they see; thus, there is no prejudice to ERHC as a result of the way in which the search was carried out and the privileged materials will be handled. See Weatherford v. Bursey, 429 U.S. 545, 556-58 (1977) (no constitutional violation where undercover agent heard conversations between defendant and his attorney, but did not disclose the information to the prosecution team, because there was not "at least a realistic possibility of injury to [defendant] or benefit to the State.").

---

[10] Government counsel has repeatedly asked ERHC's counsel to provide any materials that would assist the taint team in conducing this review, such as a list of law firms and attorneys that represent ERHC, or any documents which ERHC believes are privileged but may not be apparent on their face. However, to date, ERHC has refused to provide any such guidance.

[11] Furthermore, in order to remedy concerns articulated by ERHC, the government has offered to use this same procedure for review of the mirror-imaged hard drives.

This exact procedure was endorsed by another district court, in United States v. Grant, 2004 WL 1171258, *1-3 (S.D.N.Y. May 25, 2004), which involved the execution of a criminal search warrant that resulted in the seizure of some materials potentially protected by the attorney-client privilege. The district court approved a procedure that allowed the government to make an initial review of the documents to determine which documents were legal in nature. Id. at *1. The taint team then reviewed the documents that were legal in nature (or potentially privileged) to determine if the documents were privileged. Id. After the taint team made a determination regarding privilege, the subject of the search was able to file objections with the court. Id.

In approving the use of a taint team to review potentially privileged documents, the district court explained that the documents at issue had been seized pursuant to a lawful warrant, and that use of a taint team would permit the government to make fully informed arguments as to privilege, therefore serving the public's strong interest in the investigation and prosecution of criminal conduct. Id. at *2-3. In fact, the court noted,

> Permitting the [g]overnment's privilege team to conduct an initial review of the documents will narrow the disputes to be adjudicated and eliminate the time required to review the rulings of the special master or magistrate judge, thus reducing the possibility of delay in the criminal proceedings.

16

Id. at *3.

Another district court reached a similar conclusion involving the search of a computer believed to contain privileged attorney-client communications. See United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 43 (D. Conn. 2002) (approving government's use of a taint team).[12] The district court described the use of a filter team to review the documents for privileged information, along with ultimate review by the magistrate judge before any document was turned over to the prosecution team, as a "proper, fair and acceptable method of protecting privileged communications of an attorney." Id.[13]

Similarly, the implementation of the procedures described above will preclude any argument that ERHC was deprived of the opportunity to assert its privilege. To the contrary, those procedures will allow ERHC to assert that

---

[12] See also United States v. Ary, No. 05-10053-01-JTM, 2005 WL 2367541, at *1-2, 6-7 (D. Kan. 2005) (noting that a taint team was utilized to respond to movant's claim that the government seized privileged materials while executing a search).

[13] Some district courts have expressed reservations about the use of taint teams to review materials recovered during the execution of a search warrant on the office of an attorney or a law office, where it is likely that some recovered materials would be protected by the attorney-client privilege, and have instead favored use of special masters, magistrate judges, or the district court itself to conduct such review. See, e.g., United States v. Neill, 952 F. Supp. 834, 839-42 (D.D.C. 1997). We are not aware, however, of any decision holding the use of filter teams to be legally inadequate regarding a search of a corporate office that did not involve a criminal defense attorney. Essentially for the reasons outlined by the district court in Grant, filter teams are an entirely appropriate and eminently practical way to protect potentially privileged material recovered during the execution of a search warrant.

privilege—and have its claim adjudicated by the Court—before the prosecution

team can see, much less use, any potentially privileged document seized during the

execution of the search warrant.  It thus will have a full opportunity to identify any

materials it believes are privileged.  ERHC suffers no cognizable injury under the

Constitution because it must assert its privilege after a judicially authorized

search, rather than during it, especially when it suffers no prejudice as a result.

Furthermore, taint teams have been used in this circuit under similar

circumstances without negative comment or criticism from the Fifth Circuit Court

of Appeals.  See Brown, 341 F.3d at 407 (noting, without criticism, that a

government taint team was used to resolve privilege issues and refusing to

exercise pre-indictment jurisdiction over motion to return documents).

Finally, in arguing that these extensive protections are inadequate, ERHC in

essence asserts that in each instance where agents conduct a search of an ordinary

business, the Court must either review the entire production—here 118 boxes and

four computers—or appoint a special master to do such work, merely because

potentially privileged materials are seized.  If accepted, such a requirement would

bring investigations to a halt by depriving the government of access to the seized

evidence during the completion of this labor intensive and costly procedure.

Considering the burden already placed on the judicial system, this could take

18

years. The government intends to continue implementing its procedure and

moving forward with this investigation, including reviewing the seized evidence,

unless the Court orders otherwise.

### C.    Court or special master review is unnecessary and would severely impede the government's ongoing investigation.

In contrast to the government's efficient and adequate procedure, ERHC has

proposed that the government produce all 118 boxes and four computers to a

special master or judicial officer to review for responsiveness and privilege.

ERHC has not set forth sufficient reasons to justify resorting to this extraordinary

measure in a matter involving an ongoing investigation. The use of a special

master or court review is unwarranted under these circumstances and would result

in a miscarriage of justice because (1) it will impede the progress of the

investigation; (2) this is not the type of case which implicates the Sixth

Amendment, thus warranting the use of a special master; and (3) it will prevent the

government from fully participating in the litigation process.

First, appointing a special master or requiring Court review of all 118 boxes

and four mirror-imaged hard drives is both a time-consuming and a resource-

consuming procedure. Either alternative will further delay the proceedings by

hindering the government's ability to use the documents to conduct its

investigation.  See Grant, 2004 WL 1171258, at *1-3 ("[T]he Court is also mindful

of the burden that magistrates and district court judges would face if they were to

routinely review lawfully-seized documents in every criminal case in which a

claim of privilege was asserted."); see, e.g., United States v. Abbell, 963 F. Supp.

1178, 1184 (S.D. Fla. 1997) (special master review of 43 boxes and several

computers was not complete more than two and one-half years after searches were

executed).  If the Court assigns this matter to a special master for review, the

government's investigation will suffer significant, if not fatal delay.  Furthermore,

neither the Court nor a special master possesses the equipment or expertise

necessary to review mirror-imaged hard drives, including for deleted or destroyed

files, as contemplated by the search warrant affidavit.  See Ex. 1, Griffin Aff. ¶¶

96-97.  Thus, complying with ERHC's request will preclude the FBI from

searching for files that may be difficult to find or were deleted by the computer

user.  See Ex. 2, Griffin Aff. ¶ 5.

Second, this is not the type of case which justifies appointment of a special

master.  The search was not executed on a law office—particularly the office of a

criminal defense attorney.  The cases ERHC cites are not applicable to the search

of a typical corporate office.  ERHC failed to note the significant difference

between United States v. Stewart and this case; namely, a special master was

20

warranted because Stewart was a criminal defense attorney; thus the Sixth

Amendment was implicated. 2002 WL 1300059, * 5 (S.D.N.Y. June 11, 2002)

("The search of the law offices of a criminal defense attorney can thus raise Sixth

Amendment concerns that would not otherwise be present in the search of the

offices of a civil litigation attorney. There is no doubt that appointment of a

Special Master would help address these concerns."). Here, ERHC cannot

contend that the potentially privileged documents are protected by the Sixth

Amendment. This matter does not present the exceptional set of circumstances

identified in Stewart that required the use of a special master.

Finally, under ERHC's proposal, the government would not have the ability

to brief or argue rulings aided by the contents of all the documents. See Grant,

2004 WL 1171258, at *2 ("Without the benefit [of reviewing the documents'

contents], the privilege team would likely be unable to argue, for example, that no

attorney-client privilege attached to communications because of the crime-fraud

exception, or that a document should be available for use at trial, regardless of

work-product contents, because of necessity and unavailability by other

means.").[14]  Accordingly, the United States suggests that the procedure this

---

[14] ERHC has cited cases which seemingly disapprove of the use of taint teams. With the
exception of Stewart, however, even those courts have not ordered the material returned nor
found the materials reviewed by a taint team inadmissible. See, e.g., United States v. Neill, 952

jurisdiction typically uses is best suited to the task at hand.

## II.    UNDER CLEAR FIFTH CIRCUIT PRECEDENT, ERHC HAS NO CONSTITUTIONAL RIGHT TO ACCESS THE AFFIDAVIT PRE-INDICTMENT.

The federal courts have uniformly held that the district courts have the inherent authority to seal warrant affidavits. See, e.g., Offices of Lakeside Non-Ferrous Metals, Inc. v. United States, 679 F.2d 778, 779 (9th Cir. 1982).

ERHC is correct that courts are split on the issue of whether the Fourth Amendment grants a right of access to sealed affidavits supporting a search warrant prior to indictment. However, contrary to ERHC's assertion (ERHC Memo. of Law at 23-24), the Fifth Circuit has ruled on the issue. In In re Grand Jury Proceedings, the Fifth Circuit considered whether the continued sealing of an affidavit supporting a search warrant prior to indictment was a "callous disregard" of the movant's rights. 115 F.3d 1240, 1246 (5th Cir. 1997). The Fifth Circuit held that the government did not display a "callous disregard" for the movant's rights by requesting the warrant affidavit be sealed because the movant had no Fourth Amendment right to access the affidavit pre-indictment. Id. In so holding,

---

F.Supp. 834, 841 n.14 (D.D.C. 1997) (stating that "[h]owever unwise this policy [of using of a taint team] may be, absent a showing of harm, it does not offend the Constitution" while holding that no constitutional violation occurred because no privileged information regarding trial strategy was communicated to the prosecutors and used to the defendants' detriment).

the Fifth Circuit recognized *and adopted* the Seventh Circuit's ruling:

> First, while this court has not yet determined whether the issuance of a search warrant combined with a sealed affidavit constitutes a violation of the Fourth Amendment, the Seventh Circuit has expressly affirmed the practice. See In re Eyecare Physicians of America, 100 F.3d 514, 516 (7th Cir. 1996). The Seventh Circuit observed that "no provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment." Id. at 517. *This court ordinarily abides by the decisions of our sister circuits, and we do so with respect to this sensible decision.*[15]

Id. at 1246 (emphasis added).[16]

In light of the Fifth Circuit's decision to "abide" by this "sensible decision," ERHC's contention that the Seventh Circuit's ruling is "poorly reasoned," (ERHC Memo. of Law at 24), is irrelevant and disingenuous. Accordingly, the government requests that the Court follow established Fifth Circuit precedent and

---

[15] ERHC's characterization of the Fifth Court's language as a "favorable reference" which the court made "in dictum" (ERHC Memo. of Law at 25), coupled with ERHC's complete failure to cite this critical language, is inexplicable. The Fifth Circuit's rejection of a Fourth Amendment right was integral to its holding and clearly articulated. See In the Matter of the Search of the Scranton Housing Authority, -- F.Supp.2d --, 2006 WL 1722565, *7 (M.D. Pa., June 22, 2006) (noting that the Fifth Circuit concluded that there is no Fourth Amendment right to examine the affidavit of probable cause prior to indictment).

[16] See also Scranton Housing Authority, 2006 WL 1722565, at *7 (finding that target has no Fourth Amendment right to access the sealed affidavit prior to indictment); Matter of the Search of S & S Custom Cycle Shop, 372 F.Supp.2d 1048, 1051-52 (S.D. Ohio 2003) ("The better reasoned cases have held that no right to inspect sealed affidavits for search warrants exists *under the Constitution or the Criminal Rules*, prior to the initiation of a criminal proceeding against the movant."); Matter of Flower Aviation of Kansas, Inc., 789 F.Supp. 366, 367-69 (D. Kan. 1992) (holding that a pre-indictment right inspection was not a right under the First Amendment, the common law, or Rule 41).

find that ERHC does not have a Fourth Amendment right to access the affidavit pre-indictment, at the infancy of the government's investigation.

Even if the Court follows the out-of-circuit cases cited by ERHC and finds that ERHC has a pre-indictment Fourth Amendment right to access the affidavit, such a right is qualified, and must be balanced against the government's interest in continuing to seal the affidavit. See Search of 8420 Ocean Gateway, 353 F.Supp.2d 577, 579 (D. Md. 2004). Here, the government has several specific compelling interests, each of which is sufficient to override ERHC's qualified right to access the affidavit pending further development of this investigation.

This investigation is in its infancy; the search of ERHC's offices was the government's first overt investigative step. The 39-page affidavit describes in considerable detail specific information relating to the government's ongoing criminal investigation. In particular, the affidavit sets forth: the individuals and entities currently under investigation; the unlawful activities that the government had discovered as of the date of the affidavit; the sources of the government's information; and information about foreign individuals and entities that may be perpetrators of and/or witnesses to the criminal activity.

**A.    A compelling government interest exists to maintain the affidavit sealed because disclosure would compromise this criminal investigation.**

Disclosure of this information would inevitably jeopardize the ongoing investigation in several respects. Unsuspecting targets would learn of the investigation and have a detailed description of its nature and scope and illegal activities may either cease, be concealed, or continue in new ways that are more difficult to investigate. Moreover, evidence that the government has not yet discovered could be destroyed before the government has the opportunity to identify, locate, and secure it. These are the precise grounds that courts have articulated as sufficient to override any right of access to a sealed affidavit supporting a search warrant prior to indictment. For example, the District Court in the Middle District of Florida noted:

> The affidavits contain the identifications of individuals that are subjects of the [g]overnment's investigation. They state, at length, the scope and direction of its investigation. References to cooperating witness(es) are made throughout the documents. All of these factors support a finding that the [g]overnment's ongoing investigation would be frustrated if the affidavits were to be unsealed. . . . [P]rejudice to an ongoing investigation is a compelling reason for closure.

Matter of Search of Office Suites for World and Islam Studies Enterprise, 925 F. Supp. 738, 743 (M.D. Fla. 1996) (denying pre-indictment motion to unseal affidavit); Search Warrants in Connection with Investigation of Columbia/HCA

25

Health Care Corp., 971 F. Supp. 251, 253 (W.D. Tex. 1997) (finding that

compelling governmental interests existed to maintain affidavit under seal because

revealing its contents would provide a "roadmap of the investigation" to its

targets, "seriously compromis[ing] the integrity and effectiveness of the ongoing

investigation").[17]

### B.    Unsealing the affidavit will impede the grand jury investigative process.

The government intends to open a grand jury investigation on this matter in

the future.  Disclosure of the investigation thus far—particularly the

affidavit—could compromise the investigation before it is formally presented to

the grand jury and undermine the secrecy requirements in Fed. R. Crim. P. 6(e).

The Supreme Court has recognized that if matters relating to grand jury

proceedings become public, prospective witnesses may be deterred from

testifying, those who do testify may be less likely to do so truthfully, targets of the

investigation may flee, and persons who are the subject of an ultimately meritless

---

[17] See also Search Warrant for Secretarial Area Outside the Office of Thomas Gunn, 855 F.2d 569, 574 (8th Cir. 1988) (government established compelling interest in protecting the on-going investigation because "[t]hese documents describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved"); Search Warrant for 2934 Anderson Morris Road, 48 F.Supp.2d 1082, 1084 (N.D. Ohio 1999) ("sensitive nature of the information contained in the affidavit, the compelling governmental interest in protecting the ongoing investigation, and the privacy interests of those named in the affidavit, all weigh in favor of maintaining the affidavit under seal").

investigation may face public embarrassment.  <u>Douglas Oil Co. v. Petrol Stops</u>

<u>Northwest</u>, 441 U.S. 211, 219 (1979).  Accordingly, Rule 6(e) of the Federal Rules

of Criminal Procedure imposes an obligation of secrecy concerning all grand jury

proceedings and matters.[18]

The government anticipates that the grand jury will issue subpoenas to

entities and witnesses who are subjects of this investigation and who are

specifically named in the affidavit supporting the search of ERHC's office.

Revelation of the nature, scope, and direction of the investigation thus far, as

detailed in the search warrant affidavit, particularly when compared with the

inventory of the actual search results, could well cause certain witnesses to tailor

their testimony and/or document production, or even to destroy documents.

Premature disclosure would also preclude the use of information contained in the

affidavit or seized documents to test the credibility of these witnesses.  Thus, the

premature disclosure that the movant requests could severely compromise the

integrity of the government's investigation at a particularly sensitive and

vulnerable stage.

For these reasons, and the additional reasons discussed in the accompanying

---

[18] Fed. R. Crim. P. 6(e)(6) requires that all records, orders and subpoenas relating to the grand jury proceedings be kept under seal "to the extent and for such time as is necessary to prevent disclosure of matters occurring before a grand jury."

Declaration and Memorandum, which are to be filed <u>ex parte</u> and under seal, there

are compelling governmental interests for maintaining the affidavit under seal.

## CONCLUSION

The government respectfully requests that the Court dismiss ERHC's Rule

41(g) motion to return seized property for lack of jurisdiction, and deny ERHC's

motion to enjoin the government's use of a taint team, to appoint a special master,

and to unseal the affidavit supporting the search warrant.

Respectfully submitted,

PAUL E. PELLETIER
Acting Chief

MARK F. MENDELSOHN
Deputy Chief

By:  Mary K. Dimke, Trial Attorney
Washington State Bar No. 33865
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave. N.W.
Bond Building, 4th Floor
Washington, DC 20005
Tel: (202) 353-4378
Fax: (202) 514-7021
Mary.Dimke@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2006, I served a true copy of the United States' reponse in opposition via electronic mail on

Gregory V. Brown, Esq.
Akin Gump Strauss Hauer & Feld, LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
gbrown@akingump.com

Michael J. Madigan, Esq.
Paul W. Butler, Esq.
Michael A. Fitzpatrick, Esq.
Suzanne E. Ashley, Esq.
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, NW
Washington, D.C.  20036
mmadigan@akingump.com
pbutler@akingump.com
sashley@akingump.com

_Mary Ellen Vedas_
Mary Ellen Vedas
Paralegal Specialist